UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JUAN BAUTISTA ROMERO,

           Petitioner,

    -v-

CHRISTOPHER SHANAHAN, et al.,

           Defendants.
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 1 0 2014

14 Civ. 6631 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

    Juan Bautista Romero petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, contending that his detention without a bond hearing is not authorized under § 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c) ("INA"). Romero is a native of the Dominican Republic who was admitted to the United States in 1992 as a lawful permanent resident. On March 31, 2014, U.S. Immigration and Customs Enforcement (ICE) arrested Romero and charged that six of his eight criminal convictions spanning the last decade render him removable from the United States under the INA. Romero has been subject to no-bond detention during the pendency of his removal proceedings.

    The legal issue presented is whether the detention provision in § 236(c) applies only at the time an individual is detained immediately upon release from custody for crimes enumerated in the statute, or not. Petitioner argues it does; the defendants contend it does not. This issue has been litigated in this district a number of times previously – with the majority of courts agreeing with the

defendants.[1]  The Second Circuit has yet to address the issue.  There is a split in the circuit courts which have addressed the issue.[2]  For the reasons set forth below, the petition is DENIED.

I.     FACTUAL BACKGROUND

Romero is a 41 year-old national of the Dominican Republic who was admitted to the United States at the age of 17 as a lawful permanent resident. (Return to Habeas Petition ("Return"), Ex. 1, ECF No. 6.)  Romero's wife, a lawful permanent resident, and six children all reside in the United States.  (Petition for Writ of Habeas Corpus ("Pet.") ¶ 23, ECF No. 1.)

On March 31, 2014, ICE arrested Romero when he reported for a scheduled appointment with his probation officer.  (Return, Ex. 1.)  ICE charged Romero with being deportable in immigration removal proceedings under: INA § 237(a)(2)(B)(i),

---

[1] Cases in this district upholding detention by ICE of individuals subsequent to their release from criminal custody include Charles v. Aviles, No. 14 Cv. 3483 (MHD), 2014 WL 3765797 (S.D.N.Y. July 25, 2014); Debel v. Dubois, No. 13 Civ. 6028 (LTS), 2014 WL 1689042 (S.D.N.Y. Apr. 24, 2014); Straker v. Jones, No. 13 Civ. 6915 (PAE), 2013 WL 6476889 (S.D.N.Y. Dec. 10, 2013); Johnson v. Orsino, 942 F. Supp. 2d 396 (2013); Santana v. Muller, No. 12 Civ. 430 (PAC), 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012); Guillaume v. Muller, 11 Civ. 8819 (TPG), 2012 WL 383939 (S.D.N.Y. Feb. 7, 2012); Mendoza v. Muller, No. 11 Civ. 7857 (RJS), 2012 WL 252188 (S.D.N.Y. Jan. 25, 2012); Gomez v. Napolitano, No. 11 Civ. 1350 (JSR), 2011 WL 2224768 (S.D.N.Y. May 31, 2011); Sulayao v. Shanahan, No. 09 Civ. 7347 (PKC), 2009 WL 3003188 (S.D.N.Y. Sept.15, 2009).  Cases holding that the government can only detain aliens without a bond hearing if detained on or around the time of their release from criminal custody include Araujo-Cortes v. Shanahan, No. 14 Civ. 4231 (AKH), 2014 WL 3843862 (S.D.N.Y. Aug. 5, 2014); Lora v. Shanahan, No. 14 Civ. 2140 (AJP), 2014 WL 1673129 (S.D.N.Y. Apr. 29 2014); Louisaire v. Muller, 758 F. Supp. 2d 229 (S.D.N.Y. 2010); Monestime v. Reilly, 704 F.Supp.2d 453, 458 (S.D.N.Y. 2010); Garcia v. Shanahan, 615 F.Supp.2d 175, 182 (S.D.N.Y. 2009).

[2] The Third and Fourth Circuits have upheld the subsequent detention of individuals not detained by ICE at the time they are released from criminal custody.  See Sylvain v. Attorney Gen., 714 F.3d 150 (3d Cir. 2013); Hosh v. Lucero, 680 F.3d 375 (4th Cir. 2012).  The First Circuit created a circuit split on October 6, 2014 when it rejected the reasoning of those courts and found that failure to detain aliens within a reasonable time of release from criminal custody required that they be afforded individualized bond hearings.  See Castañeda v. Souza, 769 F.3d 32 (1st Cir. 2014).

8 U.S.C. § 1227(a)(2)(B)(i) (because he has been convicted of controlled substance offenses) and INA §237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(ii) (because his larceny offenses are crimes of moral turpitude not arising out of a single scheme).[3] The Government alleges that six of Romero's eight criminal convictions render him removable from the United States:[4]

- On August 13, 2003, Romero pled guilty to attempted petit larceny in violation of N.Y.P.L. § 110/155.25 after breaking into a vehicle and stealing clothes and a pair of shoes. (Return, Ex. 3.) He was sentenced to a $250 fine. (Id.)

- On May 4, 2004, Romero was convicted of attempted unauthorized use of a motor vehicle in the third degree in violation of N.Y.P.L. § 110/165.05 and sentenced to a one-year conditional discharge. (Return, Ex. 4.)

- On April 26, 2006, Romero pled guilty to criminal possession of marijuana and was sentenced to a $100 fine. (Return, Ex. 5.)

- On March 29, 2007, Romero pled guilty to petit larceny in violation of N.Y.P.L. § 110/155.25 after stealing merchandise from an Aeropostale Clothing store. (Return, Ex. 2.) He was sentenced to a one-year conditional discharge and seven days of community service. (Return, Ex. 6.)

---

[3] ICE had also charged Romero with removal under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) because his September 23, 2010 conviction for sale of a controlled substance was an aggravated felony. (Return, Ex. 11.) As discussed below, Romero's conviction was modified on August 13, 2014 so that he is no longer removable based on the aggravated felony charge. (Pet. ¶ 38.)
[4] The Court lists all eight convictions, though the Government has not charged the May 4, 2004 attempted unauthorized use of a motor vehicle in the third degree and June 13, 2013 criminal possession of marijuana in the fifth degree convictions as removable offenses.

3

- On February 26, 2008, Romero pled guilty to the criminal sale of marijuana in the fourth degree in violation of N.Y.P.L. § 221.40 after selling two bags of marijuana to an undercover agent and being found with a key to a mailbox which contained 18 bags of marijuana. (Return, Ex. 7.) He was sentenced to time served and a six month suspension of his license. (Id.)

- On March 13, 2008, Romero pled guilty to criminal possession of marijuana in the fifth degree in violation of N.Y.P.L. § 221.10 after smoking marijuana in a public place. (Return, Ex. 8.) He was sentenced to time served and a six month suspension of his license. (Id.)

- On September 23, 2010, Romero initially pled guilty to possession of cocaine with intent to sell, in violation of N.Y.P.L. § 220.16(1), and on January 4, 2011 was sentenced to five years of probation and a six month suspension of his license. (Return, Ex. 9.) On August 13, 2014, a modified judgment was entered wherein Romero pled guilty to a simple possession of cocaine in violation of N.Y.P.L. § 220.09. (Id.)[5]

- On June 13, 2013, Romero pled guilty to the criminal sale of marijuana in violation of N.Y.P.L. § 221.40 and was sentenced to pay a $500 fine. (Return, Ex. 10.)

---

[5] One of ICE's initial charges was for removal based on the September 23, 2010 cocaine offense. As a result of the aggravated felony charge lodged by ICE, Romero filed a motion to set aside his September 23, 2010 guilty plea and January 4, 2011 conviction for the cocaine offense. (Id.) The New York State criminal prosecutor and Supreme Court of the State of New York agreed to Romero's request to re-plead to a simple possession of cocaine. On August 13, 2014, a modified judgment was entered removing the sale element of the prior conviction to alleviate the immigration consequences of the offense. (Id.)

4

On August 19, 2014, Immigration Judge Gabriel C. Videla determined that Romero was subject to mandatory detention under 8 U.S.C. § 1226(c). (Return, Ex. 12.) While present at the Varick Detention Center in Manhattan, Romero filed the instant petition.[6] Romero remains in the custody of the Department of Homeland Security as he awaits his removal proceeding before the Executive Office of Immigration Review. That proceeding was recently re-scheduled for December 15, 2014.

## II. STATUTORY FRAMEWORK

Section 236 of the INA grants the Attorney General power to arrest and detain any alien pending a decision on whether the individual is to be removed from the United States. This authority to detain is discretionary in some circumstances, see § 1226(a), and mandatory for aliens who have been convicted of certain enumerated offenses, see § 1226(c). Aliens who fall into this latter category are not eligible for a bond determination. Section 1226(c) provides in relevant part:

(1) Custody

The Attorney General shall take into custody any alien who . . .

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title, . . .

---

[6] The Government speculates that Romero filed the habeas petition while temporarily in this district, rather than in the District of New Jersey where he is otherwise detained, in "an attempt to circumvent case law in the Third Circuit that squarely rejects the arguments in his petition." (Respondents' Mem. of L. in Opp. To Pet., at *6 n.4, ECF No. 7.) The Government is correct that the Third Circuit rejected petitioner's exact arguments in Sylvain v. Attorney Gen., 714 F.3d 150 (3d Cir. 2013). Nonetheless, the Government is also correct in admitting that jurisdiction is proper here, as jurisdiction over a habeas petition is established at the time the petition is filed. See, e.g., Mendoza v. Miller, No. 11 Civ. 7857 (RJS), 2012 WL 252188, at *2 (S.D.N.Y. Jan. 25, 2012) ("Although Petitioner is being held in New Jersey, jurisdiction is proper in this Court because he filed the petition while detained in New York in connection with his immigration proceedings.")

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only [under limited circumstances not applicable to petitioner].

8 U.S.C. § 1226(c). Congress enacted INA § 236(c) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Pub.L. No. 104–208, § 303(b), 110 Stat. 3009–586 (Sept. 30, 1996), out of concern that aliens with criminal convictions would continue to reoffend and fail to appear at their hearings. See Demore v. Kim, 538 U.S. 510, 518-20 (2003).

Following the enactment of IIRIRA, the Board of Immigration Appeals ("BIA") began considering arguments that aliens were not subject to the new detention statute because they had not been taking into custody "when . . . released" from criminal custody. In Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), the BIA held that the language of § 236(c) suggests that "Congress was not attempting to restrict mandatory detention to criminal aliens taken immediately into [INS] custody at the time of their release from a state or federal correctional institution." Id. at 124. Using principles of statutory construction, the BIA concluded that the language in § 236(c)(2), providing that the Attorney General may release "an alien described in paragraph (1)" of § 236(c), was ambiguous because "when read in isolation, [is] susceptible to different readings". Id. at 120. The BIA found that this "description" included only the categories of removable aliens enumerated in

6

subparagraphs (A) through (D) of INA § 236(c)(1), and that the "when the alien is released" clause of (c)(1) described only the earliest point at which the Attorney General's detention duty arose. Id. at 121. In other words, an alien may, but need not, be immediately detained upon release from criminal custody in order for the mandatory detention provision to apply.

III. ANALYSIS

Before turning to the merits of the habeas petition, the Court notes that it has jurisdiction to hear this petition pursuant to 28 U.S.C. § 2241. While § 1226(e) of the INA provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," in this case petitioner does not challenge a "discretionary judgment" by the Attorney General, but instead challenges the statutory framework itself. See Demore, 538 U.S. at 516-17 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); see also Gomez, 2011 WL 2224768, at *3.

Romero makes three main arguments as to why he is not subject to mandatory detention under the INA: (1) The mandatory provision does not apply to Romero because ICE took him into custody years after being released and not immediately "when . . . released" from the underlying convictions; (2) His detention violates the due process clause because it is not related to the purpose of §1226(c); and (3) Romero's detention violates the due process clause because he qualifies for discretionary relief from removal. None of these arguments is availing.

7

A.     Interpretation of Section 1226(c)

Romero contends that the language "when the alien is released" in § 1226(c) unambiguously describes the specific point in time at which the Attorney General is required to take certain aliens into custody without a bond hearing.  Here, ICE detained Romero several years after his last incarceration for a removable offense, rather than directly upon his release from criminal custody.  By contrast, the Government argues that the Court should follow the BIA's interpretation of the language of the statute as set forth in Rojas wherein the mandatory detention provision applies at any point after the alien is released from custody.  Given the lack of controlling Supreme Court or Second Circuit precedent interpreting the phrase "when the alien is released", the Court turns to the BIA, the agency tasked with interpreting the INA.

The Court reviews the BIA's interpretation of the INA pursuant to the two-step framework established by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  Under Chevron, the Court first considers whether Congress directly addressed the precise question at issue or whether the statute is ambiguous.  Id. at 842.  If the statute is unambiguous, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43.  However, if the statute is "silent or ambiguous with respect to the specific issue," the Court must proceed to the second step and consider whether the agency's interpretation is "based on a permissible construction of the statute."  Id.  Unless

8

the agency's construction is "arbitrary, capricious, or manifestly contrary to the statute", the Court must defer to that interpretation. Id. at 843.

Applying this framework, the Court agrees with many other courts in this district, see footnote 1, that the "when . . . released" language of § 1226(c) is ambiguous. Congress was not explicit in addressing whether the mandatory detention provision applies only if an alien is detained immediately upon release from criminal custody. Several courts have looked to the dictionary to find that the word "when" can include "the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun. 'When' can also mean 'at or during the time that.'" Sulayao, 2009 WL 3003188, at *4 (internal citations and quotations omitted). As Judge Rakoff summarized, the "when . . . released" language "could mean at the moment of release, or it could mean at any time following release." Gomez, 2011 WL 2224768, at *3.

Having found the statute ambiguous, the Court must determine whether the BIA's statutory interpretation in Rojas is permissible. See Chevron, 467 U.S. at 843. The BIA resolved the statute's ambiguity by analyzing four separate considerations: (1) the ordinary meaning of the statute's language, (2) the overall statutory context and goals, (3) the statute's predecessor provisions, and (4) practical considerations. Matter of Rojas, 23 I & N at 121-24. First, the BIA examined the statute's language and determined that: "[the] 'when released' clause is no more a part of the description of an alien who is subject to detention than are

9

the other concluding clauses . . . [which] simply make it plain that the duty to detain is not affected by the character of an alien's release from criminal incarceration or the possibility that an alien may be rearrested on criminal charges." Id. at 121. Next, the BIA determined that Congress was "focused on the removal of criminal aliens in general, not just those coming into [INS] custody 'when . . . released' from criminal incarceration", as "Congress was frustrated with the ability of aliens, and particularly criminal aliens, to avoid deportation if they were not actually in [INS] custody when their proceedings were complete." Id. at 122. Turning to prior versions of the INA, the BIA found instructive former § 242(a)(2), as amended by certain enactments in 1990 and 1991, because the requirements of paragraph (B) had applied to all aggravated felons, not just those that were taken into custody at the time of their release. Id. at 123–24; see also Sulayao, 2009 WL 3003188, at *6. Finally, the BIA turned to the practical consideration of where the line would be drawn under the alien's reading of the statute, asking, "Would mandatory detention apply only if an alien were literally taken into custody 'immediately' upon release, or would there be a greater window of perhaps 1 minute, 1 hour, or 1 day?" Rojas, 23 I & N at 124.

Upon reviewing the BIA's interpretation, the Court cannot conclude that it is "arbitrary, capricious or manifestly contrary to the statute." See Chevron, 467 U.S. at 844. The phrase "when the alien is released" could reasonably be interpreted to mean either "at the time that the alien is released" or "at or during the time that the alien is released." See Johnson, 942 F. Supp. 2d at 405. "Nothing in the text,

legislative history, or structure of this statute suggests that Congress intended to treat criminal aliens differently depending on whether they were detained immediately upon release from custody for the crimes enumerated in this section." Mendoza, 2012 WL 252188, at *3. As many courts in this district have concluded, BIA's interpretation is "a permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute." Sulayao, 2009 WL 3003188, at *7; see also Debel, 2014 WL 1689042, at *5 (same); Johnson, 942 F. Supp. 2d at 405 (same); Santana, 2012 WL 951768, at *4 (same); Guillaume, 2012 WL 383939, at *3 (same); Mendoza, 2012 WL 252188, at *3 (same); Gomez, 2011 WL 2224768, at *3 (same).

The BIA's interpretation is further supported by the Supreme Court's findings regarding the statute's legislative history. See Demore v. Kim, 538 U.S. 510 (2003) (upholding the constitutionality of § 1226(c)). The Court considered that, prior to enacting IIRIRA, federal authorities had struggled with a "near-total inability to remove deportable criminal aliens," due in large part to the INS's "failure to detain those aliens during their deportation proceedings" under the discretionary provisions previously in force. Id. at 519 (citations omitted). Despite the Attorney General having had discretion to conduct bond hearings, the Court found that in practice the INS faced severe limitations on funding and detention space, which affected its release determinations. See id. (citing S. Rep. 104–48, at 23). The Court further evaluated the Senate Report to find that Congress wrote the statute considering that "deportable criminal aliens who remained in the United

States often committed more crimes before being removed," id. at 518, and because "[o]nce released, more than 20% of deportable criminal aliens failed to appear for their removal hearings," id. at 519; see also Hosh, 680 F.3d at 380-81. Accordingly, Romero's statutory interpretation would controvert what the Supreme Court found Congress was trying to accomplish in enacting IIRIRA.

Finally, Romero argues that even if the Court were to find that the statute is susceptible to multiple constructions, it should apply the rule of lenity. The rule of lenity is inapplicable. The rule of lenity applies "only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning and the BIA has not offered a reasonable interpretation of the statute." Ruiz–Almanzar v. Ridge, 485 F.3d 193, 198 (2d Cir. 2007). As a matter of law, "[t]he rule of lenity . . . cannot overcome a reasonable BIA interpretation entitled to Chevron deference." Mizrahi v. Gonzales, 492 F.3d 156, 174-75 (2d Cir. 2007). The Court declines to apply the rule of lenity as it has concluded that the BIA's interpretation of § 1226(c) is reasonable and entitled to Chevron deference. See also Hosh, 680 F.3d at 384 ("[T]he conditional requirements needed to invoke Chevron do exist, and we therefore rely on Chevron instead of the rule of lenity").

The Court is sympathetic to the harsh effect mandatory detention may have on the lives of individuals and their families. Congress could have written a different statutory scheme, one which provides that when an individual has previously been released from criminal custody and demonstrates ongoing compliance with supervision, a different standard applies. They did not. As

examined in the BIA's reasonable interpretation, Congress made a different – and permissible – policy choice.

B.  Romero's Due Process Arguments

Romero makes two arguments as to why mandatory detention violates his right to due process under the Fifth Amendment: (1) mandatory detention is not reasonably related to the purpose of § 1226(c), and (2) mandatory detention is inappropriate where an alien has a substantial challenge to removability.

1.  Reasonable Relation to the Purpose of § 1226(c)

Romero first argues that the mandatory detention required by § 1226(c) bears no reasonable relationship to the statute's goals of ensuring the appearance of noncitizens at future hearings and to prevent danger to the community pending the completion of removal. He asserts that noncitizens such as himself who have lived in the community for years after criminal release cannot be considered per se dangerous or at risk of flight. While the Court is sympathetic to the argument that individual bond hearings offer the government a perfectly effective way to ensure appearance at future hearings and to prevent danger to the community, that is not the congressional choice and the Supreme Court has flatly rejected petitioner's position.

In Demore v. Kim, the Supreme Court rejected a facial challenge to the constitutionality of § 1226(c) and held that mandatory detention during the "brief

13

period necessary for . . . removal proceedings," 538 U.S. at 513, 523,[7] is constitutional as "part of the means necessary to give effect" to removal provisions in the INA, id. at 531. It found that Congress had the authority to determine that individualized hearings for aliens who are removable under certain provisions of the INA were not effective means of ensuring the aliens would actually be removed upon the entry of a removal order. Id. at 518-20. Romero's argument that his detention is not reasonably related to the purpose of § 1226(c) amounts to nothing more than disagreement with Congress's policy determination and disappointment with the Supreme Court for allowing a categorical imposition of mandatory detention.

2. <u>Substantial Challenge to Removability</u>

Romero's second constitutional argument is that mandatory detention of an alien with a "substantial challenge" to removability violates the due process clause. Romero argues that he has a "substantial challenge" to removability because he is eligible for relief in the form of cancellation of removal for permanent residents under I.N.A. § 240A(a). Romero relies on concurring and dissenting opinions in

---

[7] The Court did not set a limit for what constitutes a permissible period of detention, though it held the six-month period in that case was constitutionally permissible. Demore, 538 U.S. at 530. Courts in this district have arrived at a variety of results as to an appropriate length of detention. See, e.g., Johnson, 942 F. Supp. 2d at 408-412 (finding a fifteen month detention constitutional); Monestime v. Reilly, 704 F.Supp.2d 453, 459 (S.D.N.Y. 2010) (requiring a bond hearing for an alien detained eight months). Romero does not directly make a due process argument based on the length of time of his detention. Nonetheless, the Court notes Judge Castel's thorough analysis of the timing concern in Johnson, 942 F. Supp. 2d at 408-412, and finds that the length of time here, nearly half of that which was constitutional in Johnson, does not warrant a different ruling. Justice Kennedy suggested a possible due-process override of mandatory detention was if there was "unreasonable delay by INS in pursuing and completing deportation proceedings", Demore, 538 U.S. at 533, a circumstance not present here as the removal proceeding is scheduled for this month.

14

Demore v. Kim for the proposition that due process concerns arise with mandatory detention of an alien with such a substantial challenge to removability. See 538 U.S. at 532-33 (Kennedy, J., concurring); id. at 576-77 (Breyer, J., concurring in part and dissenting in part). The Demore Court, however, upheld the constitutionality of mandatory detention for brief periods necessary for removal proceedings. Id. at 523. The Court did not consider it relevant to the constitutionality of § 1226(c) whether the statute applied to a "deportable" alien who nevertheless might not ultimately be deported. Id. Furthermore, adopting petitioner's broader application of the regulation by making the right to a hearing available to any alien who has a substantial challenge to removal would undermine the congressional purpose of the statute, as discussed supra. While appreciative of the consequences brought by preventing aliens with substantial challenges to their removal from obtaining a hearing to challenge their detention, this Court again follows clear Supreme Court precedent. There is no due process concern in subjecting Romero to mandatory detention under § 236(c) simply because he has sought cancellation of removal, an application contingent on the discretion of immigration authorities. See also Charles v. Aviles, No. 14 Civ. 3483 (MHD), 2014 WL 3765797, at *9 (S.D.N.Y. July 25, 2014); Gayle v. Johnson, 4 F.Supp.3d 692, 706-12 (D.N.J. 2014).

IV. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DENIED.

15

The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:   New York, New York
         December 10, 2014

                                      _____
                                      KATHERINE B. FORREST
                                      United States District Judge